**David VAUGHN, Appellant**

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2005–SC–000022–DG.

Supreme Court of Kentucky.

Aug. 23, 2007.

Linda Roberts Horsman, Assistant Public Advocate, Department for Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Louis F. Mathias, Jr., Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, David Vaughn, appeals from a Court of Appeals decision upholding his conviction for attempted sodomy in the first degree and ten years imprisonment. Appellant's only issue on appeal is whether a grade school setting can satisfy the community requirement in the version of KRE 608[1] in effect prior to July 1, 2003. We find that it can and thus reverse for a new trial.

The incriminating evidence at trial was introduced primarily through B.D., the alleged victim and Appellant's eight-year-old step-daughter, as well as L.D., his ten-year-old step-son. According to them, on a summer night in 2000, Appellant babysat B.D. and L.D. while their mother, Paula Vaughn, was at work. At some point during the night, Appellant carried B.D. into his bedroom while L.D. was distracted with his video game system. Appellant then joined her on the bed and exposed his genitals. Appellant then attempted to force B.D.'s head toward his genitals, but B.D resisted and ran out of the bedroom

---

1. Since this case began before the amendment of KRE 608, the pre-amendment rule must apply to this hearing and any subsequent retrials if found necessary. *Terry v. Commonwealth,* 153 S.W.3d 794, 801 (Ky. 2005).

crying. L.D., upon hearing the crying, checked on B.D. According to L.D., B.D. told him Appellant had tried to make her "suck his penis," or words to that affect. L.D. then went into Appellant's bedroom and saw Appellant pulling up his pants. He asked Appellant what was wrong with B.D., and Appellant replied that he did not know why B.D. was crying.

When Paula returned home, B.D. was still upset. B.D. then told Paula what had allegedly happened and a fight ensued between the parents. Paula, however, did not report the alleged event to the police at the time.

A year later, the marriage between Appellant and Paula ended and Paula moved the family to her mother's house. At this time, Paula told a friend what had allegedly happened. The friend then told Paula's mother who, after confronting Paula, reported the incident to police. Appellant was then indicted and his first trial ended in a hung jury. At retrial, Appellant attempted to offer evidence from two of B.D.'s elementary school teachers to establish her reputation for untruthfulness. However, the trial court sustained the Commonwealth's objection on the grounds that an elementary school setting did not qualify as "a community."

■ The Court of Appeals upheld the trial court's decision. In particular, the Court of Appeals held that "[Appellant] failed to lay a sufficient foundation to establish that the school from which the teacher drew her opinion as to B.D.'s reputation was sufficiently large, with adequate contact with the child, to provide a trustworthy estimation of B.D.'s reputation in the community." The implication of this decision, whether intended or not, was that a school may not be able to satisfy "the community" requirement outlined in KRE 608 before its amendment in 2003. Having considered the question, and recognizing that a school setting is probably the larg-est environment a young child will spend time in, other than its home, we now hold that a school can satisfy the community requirement.

■ At the time of Appellant's trial, KRE 608 stated: "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to the limitation that the evidence may refer only to general reputation in the community." General reputation evidence "is the estimate in which he is held by the people generally with whom he associates and comes in contact with in everyday life." *Citizens Bank of Morehead v. Hunt,* 287 Ky. 646, 154 S.W.2d 730, 731 (1941). Before general reputation evidence can be admitted it must be shown that the inquiry about the person's reputation is "of the person in the community among people who know him, and not to his reputation among a small segment of the community." *Adcock v. Commonwealth,* 702 S.W.2d 440, 445 (Ky.1986).

Of course, the size of one's "community" *can differ,* based on the ability of the individual to travel and meet other people. For this reason, other jurisdictions have held that a child's community can be smaller than an adult's community, because of the child's limited mobility. *See Norton v. State,* 785 N.E.2d 625, 629–631 (Ind.App.2003) ("While it may be that a child's community is smaller than an adult's community, the child's community must be sufficiently numerous for the opinion of reputation to be reliable, and the members of that community must have had sufficient contacts with the child to justify an opinion of reputation"); *Commonwealth v. Healey,* 27 Mass.App.Ct. 30, 534 N.E.2d 301, 307 (1989) (holding that a child's community can be smaller than an adult's, but must still be large enough to develop a trustworthy opinion). In fact, several other jurisdictions have also held

that a school functions as an adequate community for reputation evidence. *See Dynes v. Dynes,* 637 N.E.2d 1321 (Ind. App.1994) (stating that Indiana law considers admissible proof of a student's veracity in his school community); *Commonwealth v. Arthur,* 31 Mass.App.Ct. 178, 575 N.E.2d 1147 (1991) (stating that a teacher should be allowed to testify about a former student because an adequate foundation was laid); *Ferrell v. Texas,* 968 S.W.2d 471 (Tex.Ct.App.1998) (holding that a school counselor was qualified to give opinion testimony on student's reputation for truthfulness because she was in a unique position to know said reputation and she had spoken with student's teacher on the topic).

Indeed, the modern trend in evidence law is to include a child's school within the definition of community. *See* Charles T. McCormick, McCormick on Evidence, § 43 (4th ed.2003) (stating that reputation can be derived from any substantial group a person is part of including a workplace or school). Even a workplace has been held to be an adequate community from which to derive reputation evidence. *See Northeast Health Management, Inc. v. Cotton,* 56 S.W.3d 440 (Ky.App.2001).

A school functions like a job for a child. Like the relationships an adult has with his co-workers, a school can create many important interpersonal relationships for the child—relationships where people can develop opinions about others. In fact, other than his or her family, it is quite likely that the largest community that a child belongs to is a school community. Thus, it is only logical that a school could function as an adequate community from which to draw reputation evidence.

It is important to note on remand, however, that the interaction of B.D. within the school attended is relevant. While a school can serve as an adequate community, the school must be large enough as measured against the child's age and other like activities, so that the reputation evidence provided is not of a "small segment of the community." *Adcock,* 702 S.W.2d at 445. In addition, certain communities within a larger school may not serve as an adequate pool from which to develop reputation evidence due to isolation or size. *See Clark v. Georgia,* 225 Ga.App. 851, 485 S.E.2d 543 (1997) (holding that a special education class that is isolated from the rest of the school population is not an adequate community). The time the child has had to interact in the school is also important, as the child may have only attended the school for a short time. The determination of whether a particular school is an adequate community is a judgment call that must be made by the trial court-similar to many other determinations required of it.

Since the trial judge ruled that evidence from two of B.D.'s elementary school teachers on B.D.'s reputation for untruthfulness was inadmissible because a school is not an adequate community, error occurred. This error was one of law, not discretion. Yet, its effect must still be measured.

In this case, it is quite possible that omitting B.D.'s alleged reputation had an effect on the verdict, and thus it cannot be harmless error. The evidence in this trial really boils down to a "he said, she said." While L.D. did provide some testimony corroborating that B.D. was upset after leaving Appellant's bedroom, he could not definitively say whether the abuse actually occurred. The substantive testimony in the trial came from witnesses testifying about B.D.'s statements. It is therefore crucial that B.D.'s reputation for truthfulness be determined since her verbal statements are the foundation upon which Vaughn's conviction stands.

The statements of B.D.'s teachers, discussing her reputation for dishonesty at the school, are crucial to attack that foundation. The jury already heard that B.D.'s mother, Paula, does not corroborate B.D.'s story. If they had heard that B.D.'s teachers also consider her to be less than truthful, it certainly could have led to an acquittal.

Thus, under the evidence presented, the error could not be said to be harmless. *See* RCr 9.24 ("the denial of [ ] relief would be inconsistent with substantial justice"). For the foregoing reasons, we reverse the opinion of the Court of Appeals, vacate Appellee's conviction and sentence, and remand the matter for a new trial.

All sitting. LAMBERT, C.J.; NOBLE and SCHRODER, JJ., concur.

CUNNINGHAM, J., dissents by separate opinion, with MINTON, J., joining that dissent.

Dissenting Opinion by Justice
CUNNINGHAM.

I agree completely with the majority that a school can be a community for reputation purposes. However, after viewing closely the excluded testimony, I do not believe its introduction would have made a difference in this case. Therefore, I respectfully dissent.

In his case, Appellant attempted to attack the testimony of the accuser, B.D., through reputation evidence. Appellant attempted to introduce the testimony of two teachers regarding the reputation of the victim in her school for truth and veracity. The proposed testimony was offered into the record by avowal.

The first teacher, Kendal Reynolds, was B.D.'s second grade teacher for the school year 1999–2000. Her narration dealt primarily with individual acts and events, rather than the general reputation of the child. The trial court correctly disallowed her testimony. The second teacher, Martha Wilbers, was B.D.'s third grade teacher for the school year 2000–2001 during which time period the attempted sodomy took place. While she too spoke of individual acts of misconduct by B.D., her testimony finally wandered into the conclusion that the child "had a reputation of not telling the truth."

The trial court excluded the evidence from both teachers. Although the trial judge's refusal to allow such evidence seemed to be rooted in terms of not meeting the criteria of Kentucky Rules of Evidence (KRE) 608 generally, both sides have litigated the appeal on the narrow issue of whether the school is sufficient community for reputation purposes.

While the Court deems that the testimony of Martha Wilbers was admissible, it is clear when considering her total account that its weight would not have carried a different result in this case. First was the matter of remoteness. Over a year had elapsed since she had had B.D. as a student before the latter related what had happened. It had been three years before the victim gave her trial testimony. Also, most of her testimony dealt with B.D. being a troublesome child, more than her reputation for truthfulness. Lastly, the reputation of a ten-year old third grader is not going to be as probative or significant as that of an adult.

In reviewing closely the testimony excluded in this case, I cannot conclude that there is a substantial possibility that the result would have been different even if the testimony of the third grade teacher had been admitted. Accordingly, the failure to admit the very limited testimony of Martha Wilbers as to the victim's reputation for truthfulness, under other evidence and circumstances in this case, was harmless error.

Therefore, I dissent from the very well-spoken opinion of Justice SCOTT.

MINTON, J., joins this dissent.